# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **TYLER MONCUS**, <br><br> Plaintiff, <br><br> v. <br><br> **LASALLE MANAGEMENT CO., LLC, et. al.,** <br><br> Defendants. | Civil Action No. 7:19-CV-75 (HL) |

## ORDER

Plaintiff Tyler Moncus brought a 42 U.S.C. § 1983 claim as well as state law tort claims against Defendant Jennifer Dawn Hart and other Defendants.[1] (Doc. 1). Before the Court is Defendant Hart's Motion to Dismiss. (Doc. 27). Defendant argues that she has common law prosecutorial immunity as to Plaintiff's federal action, and that the Eleventh Amendment, the Georgia Constitution, and the Georgia Tort Claims Act ("GTCA") bar Plaintiff's state law claims against her. *Id.* The Court finds that Defendant is immune from Plaintiff's suit. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss.

---

[1] In addition to Defendant Hart, Plaintiff has named Lasalle Management Company, LLC, Lasalle Southeast, LLC, CGL/Lasalle Irwin Properties, LLC, CGL Irwin Properties, LLC, Phil Bickham, Donnie Youghn, and Irwin County, Georgia as defendants in this suit. (Doc. 1).

## I. FACTUAL BACKGROUND

Plaintiff was arrested in Irwin County, Georgia on September 2, 2015 and subsequently indicted on two counts of aggravated assault. (Compl. ¶¶ 20, 22). The Irwin County Detention Center ("Detention Center") detained Plaintiff for eighteen days before his release on bail. (*Id.* at ¶ 21). Defendant, in her role as Tifton Circuit District Attorney, prosecuted the criminal charges against Plaintiff. (*Id.* at ¶ 23). Plaintiff's defense counsel, Thomas J. Pujadas, and Defendant negotiated a plea agreement to resolve the charges. (*Id.* at ¶ 25). In accordance with the plea agreement, Plaintiff pled guilty to one count of aggravated assault. (*Id.*). On August 28, 2017, the Superior Court sentenced Plaintiff to ten days of incarceration followed by five years of probation. (*Id.* at ¶ 26).

Plaintiff served the full ten days of his sentence of incarceration. (*Id.* at ¶ 38). He alleges that he was entitled to and denied credit for the eighteen days he spent in pretrial detention. (*Id.* at ¶¶ 48–49); *see* O.C.G.A. § 17-10-11 ("Each person convicted of a crime in this state shall be given full credit for each day spent in confinement awaiting trial."). According to Plaintiff, the eighteen days he spent in pretrial detention nullified his subsequent ten-day sentence (Compl. ¶¶ 48–49), and he should have been "immediately released upon presentation to [Donnie Youghn,] the Irwin County Sheriff" at the Detention Center. (*Id.* at ¶ 30). Instead, Plaintiff was taken into custody. (*Id.* at ¶ 31). Mr. Pujadas phoned Mr. Youghn to arrange for Plaintiff's release. (*Id.* at ¶ 32). Plaintiff alleges that while

Mr. Pujadas was on the phone with Mr. Youghn, Mr. Pujadas overhead a prison employee say Defendant ordered that Plaintiff remain in custody. (*Id.* at ¶ 33).

Mr. Pujadas filed a writ of mandamus seeking Plaintiff's immediate release. (*Id.* at ¶ 37). However, the state court failed to conduct a hearing and rule on his petition while Plaintiff spent ten days in the county jail. (*Id.*). Plaintiff filed this suit on May 24, 2019, alleging claims under § 1983 and Georgia tort law. (Doc. 1). Defendant filed her motion to dismiss for failure to state a claim on July 9, 2019. (Doc. 27).

### II. MOTION TO DISMISS STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept the facts alleged in the plaintiff's complaint as true and construe all reasonable inference in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271,1273 n.1 (11th Cir. 1999); *see* FED. R. CIV. P. 12(b)(6). To avoid dismissal, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Prosecutorial immunity may be asserted as an affirmative defense pursuant to a Rule 12(b)(6) motion. *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999). The district court may dismiss a complaint with prejudice if the defendant's motion demonstrates that the complaint factually supports an immunity defense. *Id.*

## III. ANALYSIS

### A. Section 1983 Claim

Common law grants prosecutors absolute immunity from § 1983 actions that stem from conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The Court takes a "functional approach" to evaluate the prosecutor's specific conduct and determine whether it receives absolute or qualified immunity. *Hart v. Hodges*, 587 F.3d 1288, 1294 (11th Cir. 2009). This approach "looks to the nature of the function performed, not to the identity of the person who performed it." *Id.* at 1294–95. Absolute immunity applies to a prosecutor's actions undertaken as an advocate for the State. *Id.* at 1295. Actions that serve a prosecutor's investigative or administrative roles do not receive absolute immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009). Acting as a complaining witness also does not warrant absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997). Prosecutors are "entitled only to qualified immunity" when they function as administrators, investigators, or complaining witnesses rather than as advocates. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

The Supreme Court is clear that the prosecutor's function as an advocate includes preparing to initiate a prosecution and presenting the State's case in judicial proceedings. *Id.* at 269–70 (quoting *Imbler*, 424 U.S. at 431 n.33). This function encompasses a wide range of conduct—including illegal or

4

unconstitutional actions—for which prosecutors receive absolute immunity. Prosecutors have absolute immunity when "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate complaints about the prison system, and threatening further criminal prosecutions." *Hart*, 587 F.3d at 1295 (quoting *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979)); *see Imbler*, 424 U.S. at 437 ("[A] prosecutor is absolutely immune from suit for malicious prosecution.").

Less clear is to what extent common law affords absolute immunity for prosecutors' post-sentencing actions. The Supreme Court has not spoken on the issue. The Eleventh Circuit has indicated that absolute immunity "may extend to certain post-sentencing conduct of a prosecutor." *Hart*, 587 F.3d at 1296. For example, prosecutors receive absolute immunity for their advocacy before the Parole Commission and in habeas corpus proceedings. *See Wright v. Pearson*, 747 F. App'x 812, 814 (11th Cir. 2018) ("[A]bsolute immunity extends to a prosecutor's conduct during post-conviction proceedings."); *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("[A] prosecutor has absolute immunity for presentation of evidence at post-sentencing habeas corpus proceedings."); *Allen v. Thompson*, 815 F.2d 1433, 1434 (11th Cir. 1987) (forwarding information to Parole Commission receives absolute immunity because "[p]arole decisions are the continuation of the sentencing process"). At issue in this case is whether a

prosecutor receives absolute immunity for actions undertaken to enforce a state sentence, and more specifically, whether absolute immunity applies when such enforcement actions deny the defendant's credit for time served in pretrial detention.

Defendant relies on *Hart v. Hodges* to support her Motion to Dismiss. 587 F.3d 1288; *see* (Doc. 27-1, p. 4). She argues that this opinion "made clear that a prosecutor's role extends to conduct related to the criminal defendant's sentence." (Doc. 44, p. 2). In *Hart*, the plaintiff was indicted on both federal and state offenses. 587 F.3d at 1291. The plaintiff's lawyer negotiated a plea agreement with the Assistant United States Attorney and Defendant Hodges, the District Attorney assigned to the plaintiff's state case. *Id*. The plaintiff agreed to plead guilty in exchange for an agreement that he would serve his state sentence concurrently with his federal sentence, and the state sentence would be the same length as the federal sentence. *Id.* The federal court sentenced the plaintiff to twenty-seven months' imprisonment. *Id*. The state court ordered that the plaintiff would receive no additional time on his state sentence. *Id*.

While under federal supervision, prison officials decided that the plaintiff's federal sentence would end "three months earlier than the full 27-month sentence." *Id*. Before the plaintiff's release, Hodges sought a detainer against

him to ensure he served the full twenty-seven months on his state sentence.[2] *Id.* at 1292. State officers detained the plaintiff upon his release from federal custody—three months before his original prison sentence was to end. *Id.* Hours later, county jail officials released the plaintiff after confirming his assertion that the state court had ordered no additional prison time following completion of his federal sentence. *Id.* After the plaintiff's release, Hodges made statements to the media saying plaintiff "could be charged with escape if he failed to report to the Georgia prison." *Id.* at 1293. Plaintiff surrendered three days later. *Id.*

The plaintiff filed a § 1983 claim against Hodges for his actions as District Attorney. *Id.* The Eleventh Circuit held that Hodges' actions—namely, having the plaintiff detained after he completed his federal prison sentence—were "so intimately associated with the judicial phase of the criminal process as to cloak him with absolute immunity." *Id.* at 1298 (quoting *Allen*, 815 F.2d at 1434). The Court wrote: "All of Hodge's actions were directly related to and intimately associated with the state trial court's sentence and his role as an advocate regarding the court's sentence. Hodges was working to advocate the judicial

---

[2] Hodges sought a detainer on June 6, 2001, when first learning that the plaintiff's federal sentence would end three months early. *Hart*, 587 F.3d at 1292. The state trial court removed that detainer on February 20, 2003 and further ordered that plaintiff serve no additional time on his state sentence once released from federal custody. *Id.* On March 12, 2003, Hodges filed an appeal of the state court's February 20th sentence and sought a second detainer against the plaintiff. *Id.* The Georgia Department of Corrections issued that warrant on March 12, 2003, two days before his release from federal custody on March 14, 2003. *Id.*

7

sentence he understood (whether correctly or mistakenly) had been imposed by the state trial court." *Id*. at 1297–98.

Here, Defendant argues that *Hart* requires dismissal of Plaintiff's § 1983 claim. (Doc. 27-1, p. 4). Plaintiff attempts to distinguish this case from *Hart* arguing that the *Hart* plaintiff "was released from custody *before* his court-imposed sentence expired." (Doc. 40, p. 9) (emphasis original). According to Plaintiff, when District Attorney Hodges sought the detainer, he merely sought to have the plaintiff "serve the remainder of his [state] sentence." *Id.* In the present case, Plaintiff argues that—according to Georgia law—he had already completed his sentence at the time he was booked. *Id*. By statute, "[e]ach person convicted of a crime in [Georgia] shall be given full credit for each day spent in confinement awaiting trial." O.C.G.A. § 17-10-11. The "credit given for time served is computed by the pre-sentence custodian, and it is awarded by the post-sentence custodian." *Maldonado v. State*, 260 Ga. App. 580, 580 (2003). "[T]he trial court is not involved in this process" at any point. *Id*. Therefore, Plaintiff alleges that Defendant had no authority to interfere with the time credit calculation, and her illegal conduct deprived him of time credits that he was entitled to by statute. (Doc. 40, p. 6). Defendant characterizes her conduct more broadly; her motion asserts that she—like District Attorney Hodges in *Hart*—"was working to advocate the judicial sentence she understood (whether correctly or mistakenly)

had been imposed by the state trial court." (Doc. 27-1, p. 6 (quoting *Hart*, 587 F.3d at 1297–98)).

Plaintiff's argument misstates the rule. Whether Defendant's conduct lacked authority or was mistaken, wrong, or even malicious is immaterial. *See Hart*, 587 F.3d at 1298 ("[T]he absolute immunity doctrine has evolved such that even wrongful or malicious acts by prosecutors are allowed to go unredressed."). The proper inquiry is whether Defendant acted within her role as an advocate for the State. The Eleventh Circuit instructs that "[a prosecutor's] role as an advocate regarding the court's sentence" includes pursuing a defendant's completion of that sentence. *Id.* The state court sentenced Plaintiff to ten-days' incarceration, and Defendant caused Plaintiff to be held in custody for the sentence's duration before he had been discharged or his time credits awarded.

Plaintiff is correct to note the factual background of *Hart*—that District Attorney Hodges advocated for a sentence term while the plaintiff was still in custody serving such sentence is significant. However, those facts do not distinguish *Hart* from Plaintiff's case. Although Plaintiff spent eighteen days in pretrial detention, his prison sentence had not been completed when he arrived at the Detention Center. The Detention Center, as Plaintiff's "post-sentence custodian," was still in the process of discharging his sentence. *Maldonado*, 260 Ga. App. at 580. The Supreme Court and Eleventh Circuit do not set forth any temporal guidance establishing at what point the "judicial phase" ends. But that

9

issue is not before the Court because it is evident that Plaintiff's case involved an ongoing prosecution. Assuming as the Court must that Defendant interfered with and denied Plaintiff's credit for pretrial detention, her conduct was still "intimately associated with the judicial phase," which *Hart* instructs includes enforcement of a judicial sentence. *Hart*, 587 F.3d at 1297–98 (quoting *Imbler*, 424 U.S. at 430). The Court finds that Defendant's conduct receives absolute prosecutorial immunity.[3] Plaintiff's § 1983 claim is **DISMISSED.**

### B. State Law Claims

Plaintiff brings state law claims against Defendant for false imprisonment and intentional infliction of emotional distress. (Doc. 1). In her Motion to Dismiss, Defendant argues that the Eleventh Amendment, the Georgia Constitution, and the GTCA bar Plaintiff's state law claims. (Doc. 27-1).

The Eleventh Amendment bars suits against state employees sued in their official capacity for actions related to their employment. *See Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) ("Eleventh Amendment immunity bars suits brought in federal court when the State itself . . . [or] an 'arm of the state' is

---

[3] This is not to say that a prosecutor would receive absolute immunity for post-sentencing actions taken after an individual has completed a sentence and is released from custody. In *Hart*, the prosecutor sought a detainer two days before the plaintiff was released from federal custody and three months before his original sentence was set to end. *See Hart*, 587 F.3d at 1292. Here, Defendant interfered with the credit calculation for Plaintiff's time served before he had been discharged. The Court's Order today reflects the notion that prosecutors' conduct advocating for completion of a sentence receives absolute immunity if the prosecutor's conduct at issue occurred while that prosecution is ongoing.

sued."); *Kentucky v. Graham*, 473 U.S. 159, 163–68 (1985) (distinguishing "between personal- and official-capacity suits"). These official-capacity suits are "treated as suits against the State," and the State's sovereign immunity precludes suit against state employees in federal court. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Graham*, 473 U.S. at 167 ("[I]mmunities that can be claimed in an official-capacity action are forms of sovereign immunity . . . such as the Eleventh Amendment."). However, State employees sued in their *individual* capacity do not receive the Eleventh Amendment's protection. *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) (citing *Hafer*, 502 U.S. at 25–26). Individual-capacity suits seek recovery from the individual defendant rather than the state entity that employs him, so sovereign immunity is not involved. *Graham*, 473 U.S. at 167–68. Plaintiff's Complaint is clear that he initiated suit against Defendant in her individual capacity rather than her official capacity. (Doc. 1). Therefore, the Eleventh Amendment is no shield against Plaintiff's state claims.

Prosecutorial immunity established in Georgia's Constitution does not rely on sovereign immunity. This type of immunity does not distinguish between whether the defendant is sued in her official or individual capacity. *See Mosier v. State Bd. of Pardons & Paroles*, 213 Ga. App. 545, 546 (1994) (dismissing state law claims against prosecutors "who were sued in their individual capacities"). Georgia's Constitution specifically creates prosecutorial immunity "for actions arising from the performance of [district attorneys'] duties." GA. CONST. art. VI, §

8, para. 1(e). As with Plaintiff's federal claims, "[t]he determining factor" is "whether the act or omission is intimately associated with the judicial phase of the criminal process." *Mosier*, 213 Ga. App. at 546. The Court has concluded that Defendant acted to enforce the state court's sentence and such action is intimately associated with the judicial phase and her role as an advocate for the State. Accordingly, Defendant is immune from Plaintiff's state law claims. *See, e.g.*, *Smith v. City of Hartwell*, No. 3:13-CV-12 (CDL), 2013 WL 1411563, at *1 (M.D. Ga. Apr. 8, 2013) (dismissing state law claims because prosecutor received immunity under Georgia Constitution). Because the prosecutorial immunity provided in Georgia's Constitution bars Plaintiff's state law claims, the Court declines to consider whether the GTCA immunity applies. Plaintiff's state law claims against Defendant are **DISMISSED.**

### IV. CONCLUSION

Prosecutorial immunity bars Plaintiff's § 1983 action and state law claims against Defendant. Accordingly, Defendant's Motion to Dismiss is **GRANTED.** Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE.** Defendants Motion to Stay Discovery (Doc. 30) is **DISMISSED AS MOOT**.

**SO ORDERED**, this 22nd day of October, 2019.

<u>*s/ Hugh Lawson*</u>
**HUGH LAWSON, SENIOR JUDGE**

kac