# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### VALDOSTA DIVISION

TYLER MONCUS,

      Plaintiff,

v.

LASALLE MANAGEMENT CO., LLC, et al.,

      Defendants.

Civil Action No. 7:19-CV-75 (HL)

## ORDER

Plaintiff Tyler Moncus brings claims under 42 U.S.C. § 1983 as well as state law tort claims against Defendant Donnie Youghn and other Defendants.[1] (Doc. 1). He alleges that Defendants wrongfully incarcerated him for ten days because Defendants failed to credit his sentence for the time Plaintiff was detained prior to sentencing. Before the Court is Defendant Youghn's Motion for Leave to File Amended and Recast Answer to Plaintiff's Complaint (Doc. 46)[2] and Motion for Judgment on the Pleadings (Doc. 49).[3] In Defendant's Motion to

---

[1] In addition to Defendant Youghn, Plaintiff has named Jennifer Dawn Hart, Lasalle Management Company, LLC, Lasalle Southeast, LLC, CGL/Lasalle Irwin Properties, LLC, CGL Irwin Properties, LLC, Phil Bickham, and Irwin County, Georgia as defendants in this suit. (Doc. 1). This Court granted Defendant Hart's Motion to Dismiss on October 22, 2019. (Doc. 57).

[2] Defendant Irwin County, Georgia joined Defendant Youghn on this Motion.

[3] Defendants Youghn and Irwin County, Georgia have also filed Motions to Stay Discovery (Docs. 53, 55). The Court held a telephone conference on October 29, 2019 to discuss Defendants' discovery concerns. At the conclusion of the call and after hearing argument, the Court denied Defendants' discovery motions.

Amend, he seeks to attach to his Answer: a transcript of Plaintiff's sentencing hearing; the sentencing judge's order and final disposition of sentence; and the Writ of Mandamus Nisi issued by the sentencing judge. (Doc. 46). The Court **GRANTS** Defendant's Motion to Amend.

In Defendant's Motion for Judgment on the Pleadings, he argues that quasi-judicial immunity, the Eleventh Amendment, and qualified or official immunity bar all Plaintiff's claims against him. (Doc. 49). The Court finds that the Eleventh Amendment applies, and Defendant is immune from Plaintiff's official-capacity claims. He is not immune from Plaintiff's remaining claims. Accordingly, the Court **GRANTS in part and DENIES in part** Defendant's Motion for Judgment on the Pleadings.

## I. FACTUAL BACKGROUND

Plaintiff was arrested in Irwin County, Georgia on September 2, 2015 and subsequently indicted on two counts of aggravated assault. (Doc. 1, ¶¶ 20, 22). Plaintiff was detained for eighteen days at the Irwin County Detention Center ("Detention Center") before his release on bail. (*Id.* at ¶ 21). Plaintiff's counsel Thomas J. Pujadas and the District Attorney negotiated a plea agreement to resolve the charges. (*Id.* at ¶ 25). Plaintiff pled guilty to one count of aggravated assault in accordance with their plea agreement. (*Id.*). On August 28, 2017, the Irwin County Superior Court sentenced Plaintiff to ten days of incarceration followed by five years of probation. (*Id.* at ¶ 26).

That afternoon Plaintiff arrived at the Detention Center expecting to be released. According to Plaintiff, the eighteen days he spent in pretrial detention satisfied his subsequent ten-day sentence (*Id.* at ¶¶ 48–49). Defendant Youghn, as sheriff, oversaw the Detention Center. Plaintiff alleged that he should have been "immediately released upon presentation to [Defendant Youghn,] the Irwin County Sheriff" at the Detention Center. (*Id.* at ¶ 30). Instead, Plaintiff was taken into custody. (*Id.* at ¶ 31). Pujadas phoned Defendant at the Detention Center to arrange for Plaintiff's release. (*Id.* at ¶ 32). Plaintiff alleges that while Pujadas was on the phone with Defendant, Pujadas overheard a jail employee say the District Attorney ordered that Plaintiff remain in custody. (*Id.* at ¶ 33). Defendant held Plaintiff in custody despite Pujadas' urging. (*Id.* at ¶ 36).

Pujadas filed a writ of mandamus seeking Plaintiff's immediate release. (*Id.* at ¶ 37). However, the Superior Court failed to conduct a hearing and rule on his petition expeditiously. (*Id.*). Defendants detained Plaintiff for the full ten days of his sentence of incarceration. (*Id.* at ¶ 38). Plaintiff filed this suit alleging claims under § 1983 and Georgia tort law. He alleges that he was entitled to and denied credit for the eighteen days he spent in pretrial detention. (*Id.* at ¶¶ 48–49). Therefore, any time he spent incarcerated violated his Fourteenth Amendment right to be free from detention without lawful authority.

## II. MOTION TO AMEND ANSWER

The Court will first take up Defendant's Motion to Amend his Answer. (Doc. 46). Defendant seeks to attach documents related to the sentencing proceedings to his Answer. (*Id.*). The Federal Rules of Civil Procedure allow parties to amend a pleading once as a matter of course within twenty-one days of its service. Fed. R. Civ. P. 15(a)(1)(A). Defendant's Motion to Amend comes long after the twenty-one-day deadline.[4] In such cases, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* at Rule 15(a)(2). Plaintiff opposes Defendant's proposed amendment, and therefore Defendant must rely on the Court's discretion to grant leave to amend his Answer. (Doc. 47). The Federal Rules of Civil Procedure instruct that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this instruction to grant leave "freely," the Supreme Court has identified factors that justify denying a proposed amendment such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014).

The documents Defendant seeks to attach include a transcript of Plaintiff's Superior Court sentencing hearing (Doc. 46, p. 23), the final disposition of

---

[4] Defendant Youghn filed his Answer on June 19, 2019. (Doc. 12). His Motion to Amend was filed on August 27, 2019, more than two months later. (Doc. 46).

Plaintiff's sentence (*Id.* at p. 39), and the Superior Court Judge's Mandamus Nisi (*Id.* at p. 45). Plaintiff argues that Defendant's "amendment would be futile." (Doc. 47, p. 3). According to Plaintiff, such documents are futile because Georgia law advises that trial courts do not participate in calculating or awarding credits for time served in pretrial detention. *Maldonado v. State*, 260 Ga. App. 580, 580 (2003). Therefore, any evidence related to sentencing at the trial court does not bear on Plaintiff's claims. Defendant argues that his amendment is necessary because "each of these documents set forth the true terms of his plea agreement and Judge Cross' sentence." (Doc. 48, p. 4). And according to Defendant, the documents and sentencing relate to the defenses raised in his Answer. (*Id.*).

The Court finds no undue delay, bad faith, or failure to cure deficiencies on behalf of Defendants. Additionally, Plaintiff will suffer no undue prejudice if the Court allows the Amendment. The only factor at issue is the Amendment's futility. While the Court agrees that trial courts do not affect the time credit awarded for pretrial detention, undisputed evidence regarding Plaintiff's sentencing would provide the Court with factual context that bears on Defendant's affirmative defenses. The Court, accordingly, **GRANTS** Defendant's Motion to Amend. (Doc. 46). Defendant's attached exhibits shall become part of his Answer.

Next, the Court must determine whether it can consider Defendant's exhibits attached to his Answer as part of his Motion for Judgment on the

Pleadings. This inquiry is separate from the Court's Rule 15(a)(2) determination that simply permits the attachment.

The Eleventh Circuit applies the incorporation by reference doctrine to documents attached to pleadings in the Rule 12(c) context. *See Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002) ("That doctrine . . . must apply for Rule 12(c) purposes to documents attached to answers . . . ."). The doctrine dictates whether a document attached to a pleading "may be considered by the court without converting the motion into one for summary judgment." *Id.* at 1134; *see* Fed. R. Civ. P. 12(d) ("If, on a motion [for judgment on the pleadings], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The court may consider Defendant's documents attached to his Answer only if the documents are (1) central to the plaintiff's claim and (2) of undisputed authenticity. *Horsley*, 304 F.3d at 1134.

Defendant concludes that the attached documents are central to Plaintiff's claim, but he does not offer any support as to *why* they are central. (Doc. 50, p. 6). Plaintiff argues in his response to Defendant's Motion to Amend that the documents do not relate to his claims because under Georgia law, trial courts do not participate in calculating or awarding credits for time served in pretrial detention. *Maldonado*, 260 Ga. App. at 580. The "trial court is not involved" in the process of awarding time credits, yet all Defendant's attachments are trial court

6

documents. *Id.* The Court finds that the attached documents are not central to Plaintiff's claims to justify the Court's consideration at this stage of the litigation. The Court need not convert the motion to one for summary judgment.

### III. MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

Parties may move for a judgment on the pleadings "[a]fter the pleadings are closed" but "early enough not to delay trial." Fed. R. Civ. P. 12(c). Defendant filed his Answer and Amended Answer before filing his Motion for Judgment on the Pleadings. (Docs. 12, 46, 49). The pleadings have "closed," and Defendant's Motion is ripe for this Court's review. *See Perez*, 774 F.3d at 1336–37 (discussing when pleadings "close" for Rule 12(c) analysis).

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id.* at 1335 (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). Courts consider "the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Like a motion to dismiss, courts "accept as true all material facts alleged in the non-moving party's pleading," and view those facts "in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335. Review focuses on the "competing pleadings," otherwise known as the complaint and answer, and compares their allegations. *Id.* Where material issues of fact arise,

or as a matter of law the non-moving party states a claim, judgment on the pleadings must be denied. *Id.*

## IV. ANALYSIS

Georgia law gives "full credit for each day spent in confinement awaiting trial" against a defendant's sentence. O.C.G.A. § 17-10-11(a) ("[C]redits shall be applied toward the convicted person's sentence . . . ."). Plaintiff spent eighteen days in pretrial detention before the Superior Court sentenced him to ten days of incarceration. Plaintiff alleges that he was entitled to have his ten-day sentence credited eighteen days. After crediting his sentence, Defendants had no lawful authority to imprison him. Thus, Plaintiff alleges that any time he spent incarcerated violated his right to be free from unlawful detention. Defendant, as sheriff of Irwin County, Georgia, oversaw the county jail where Plaintiff was detained. Plaintiff alleges that Defendant is liable under § 1983 and Georgia tort law for illegally detaining him and for failing to establish policy for crediting sentences after pretrial detention.

Defendant does not aver that Plaintiff's Complaint fails to allege sufficient facts to establish his claims. Rather, his Motion for Judgment on the Pleadings asserts various immunities arising from his position as sheriff. (Doc. 50). Defendant argues that quasi-judicial immunity, the Eleventh Amendment, qualified immunity, and official immunity render him immune to all Plaintiff's claims. (*Id.*).

### A. Quasi-Judicial Immunity

Defendant first argues that quasi-judicial immunity bars Plaintiff's claims. (Doc. 50, p. 7). Judges receive absolute immunity "for acts performed in their judicial capacity, provided such acts are not done in the clear absence of all jurisdiction." *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)) (quotation marks omitted). Quasi-judicial immunity flows from the judiciary to protect other government employee's conduct that is "intimately associated with the judicial phase of the criminal process." *Washington v. Rivera*, 939 F.3d 1239, 1243 (11th Cir. 2019) (quoting *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir. 1984)). To determine whether a government employee receives quasi-judicial immunity, courts analyze the employee's function at issue. *Id.* Courts do not rely on "the status of the defendant" or his "rank, title, or location within the government." *Id.* (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985)). "[T]he nature of the responsibilities of the individual official" guides the court's analysis. *Id.* This "functional approach" shields government employees from suit when the function at issue has "an integral relationship with the judicial process." *Id.* (quoting *Roland*, 19 F.3d at 555).

Defendant argues that quasi-judicial immunity protects his conduct because as sheriff, he imprisoned Plaintiff pursuant to the Superior Court's order that sentenced Plaintiff to ten days in jail. (Doc. 50, p. 7). To be sure, quasi-

judicial immunity protects "law enforcement officials executing a facially valid court order." *Roland*, 19 F.3d at 555. *Roland* explained that quasi-judicial immunity is broad. It protects law enforcement officials executing orders that, while facially valid, are unlawful. *See id.* ("The proper procedure for a party who contests a judicial order is to appeal that order and not to sue the official responsible for its execution." (quotation marks and citation omitted)). These officials simply execute judicial orders; they are not "required to act as pseudo-appellate courts scrutinizing the orders of judges." *Id.* Therefore, law enforcement officials are immune from suit when, in hindsight, the judicial orders are unlawful. *See id.* ("'Facially valid' does not mean 'lawful.' An erroneous order can be valid.").

Defendant's reliance on *Roland* mischaracterizes Plaintiff's Complaint. Plaintiff does not challenge the Superior Court's imposition of sentence. The Superior Court's sentence is valid. Instead, Plaintiff alleges that Defendant failed to perform his function as administrator of the jail. Specifically, Plaintiff alleges that Defendant's failure to establish policy to comply with O.C.G.A. § 17-10-11(a), and consequently, Defendant's failure to facilitate credits on Plaintiff's sentence for the time he served in pretrial detention led to his over-detention. Defendant's execution of the Superior Court's order is separate from this function.

Defendant's function at issue is his obligation as administrator of the Detention Center to facilitate awarding credits for pretrial detention. Georgia law has declared that this function is not a judicial function. "[C]redit given for time served is computed by the pre-sentence custodian, and it is awarded by the post-sentence custodian." *Diaz v. State*, 245 Ga. App. 380, 381 (2000). Notably, "the trial court is not involved in this process." *Maldonado*, 260 Ga. App. at 580. Georgia courts have consistently recognized this exclusion of the trial court from calculating and awarding the amount of credit given for time served. *See, e.g.*, *Williams v. State*, 300 Ga. App. 319, 320 (2009) ("The trial court is not involved in this determination." (quoting *Smashey v. State*, 282 Ga. App. 293, 294 (2006))); *Johnson v. State*, 248 Ga. App. 454, 455 (2001) ("[A] trial court is not responsible for computing a defendant's credit for time served."). Establishing jail policy to facilitate this process has nothing to do with the trial court. Therefore, Defendant's function at issue is not "functionally comparable to those of judges" or intimately associated with the judicial phase. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993). And quasi-judicial immunity does not bar Plaintiff's claims.

### B.    Eleventh Amendment

In his Motion for Judgment on the Pleadings, Defendant argues that the Eleventh Amendment bars Plaintiff's official-capacity § 1983 claim and state law

claims against him. (Doc. 50, p. 11). Defendant does not contend that the Eleventh Amendment bars liability in his individual capacity.

### 1. Immunity from Suit in Federal Court

The Eleventh Amendment bars suits against state employees sued in their official capacity for actions related to their employment. *See Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) ("Eleventh Amendment immunity bars suits brought in federal court when the State itself . . . [or] an 'arm of the state' is sued.") (en banc); *Kentucky v. Graham*, 473 U.S. 159, 163–68 (1985) (distinguishing "between personal- and official-capacity suits"). These official-capacity suits are "treated as suits against the State," and the State's sovereign immunity precludes suit against state employees in federal court. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Graham*, 473 U.S. at 167 ("[I]mmunities that can be claimed in an official-capacity action are forms of sovereign immunity . . . such as the Eleventh Amendment."). State employees sued in their *individual* capacity, however, do not receive the Eleventh Amendment's protection. *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). Individual-capacity suits seek recovery from the individual defendant rather than the state entity that employs him, so sovereign immunity is not implicated. *Graham*, 473 U.S. at 167–68.

To receive immunity from Plaintiff's official-capacity claims, Defendant must have acted "as an 'arm of the State.'" *Manders*, 338 F.2d at 1308. "[T]he

Eleventh Amendment does not immunize municipalities from suit." *Stanley v. Israel*, 843 F.3d 920, 924 (11th Cir. 2016). The Supreme Court is clear that § 1983 claims remain viable against "municipalities and other local government units." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978). Therefore, the Eleventh Amendment bars Plaintiff's official-capacity claims against Defendant only if he acted as an arm of the state of Georgia when the alleged illegal conduct occurred. If Defendant acted as an arm of Irwin County, Plaintiff's claims survive the Eleventh Amendment's bar.

That Defendant's title is Sheriff of Irwin County, instead of a state-wide position does not automatically deny him Eleventh Amendment protections. *Manders*, 338 F.3d at 1308. Defendant's job title or status carries little weight in the Court's analysis. *Id.* ("[A] defendant need not be labeled a 'state officer' or 'state official' . . . ."). The Court focuses on what function the defendant performed at the time his alleged illegal conduct occurred. *Id.* Here, Defendant's particular function at issue is his role as administrator of the Irwin County Detention Center. Specifically, Plaintiff alleges that Defendant failed to establish policy for awarding credit for time served during pretrial detention, and thus Defendant illegally detained him. (Doc. 1 ¶ 82–83).

In *Manders*, a four-factor test emerged to analyze a defendant's specific functions and whether those functions represent an arm of the State. *See Stanley*, 843 F.3d at 924 (discussing the progression of arm-of-the-state

analysis). The four factors the Court considers are: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309. When applying those factors, the Court evaluates both the governmental structure of the sheriff's office in relation to the State and the actor's particular functions at issue. *Lake v. Skelton*, 840 F.3d 1334, 1337–38 (11th Cir. 2016). Therefore, to resolve the Eleventh Amendment inquiry, the Court looks to Georgia law and how it governs the Defendant and Irwin County.

### 2. Governmental Structure

The state of Georgia "exerts significant control" over county sheriffs. *Lake*, 840 F.3d at 1338. Georgia's Constitution created the sheriff's office. Ga. Const. art. IX, § 1, ¶ III. Where Georgia's Constitution affords governing authority to counties, it explicitly declines to extend the county's power to the sheriff's office. Ga. Const. art. IX, § 2, ¶ I(c)(1) (establishing "[h]ome rule for counties"). "[T]he sheriff's office is a separate constitutional office independent" from the county and "its governing body." *Manders*, 338 F.3d at 1310. Sheriffs are not county employees. *Id.* (citing *Bd. of Comm'rs of Randolph Cty. v. Wilson,* 260 Ga. 482, 482 (1990) ("The sheriff . . . is subject to the charge of the General Assembly and is not an employee of the county commission.")). And the State legislature has

"the exclusive authority to establish and to control a sheriff's powers and duties." *Manders*, 338 F.3d at 1310; *see* Ga. Const. art. IX, § 1, ¶ III(a)–(c).

Though the Eleventh Circuit calls the sheriff "separate and independent" from the county, the inquiry is complicated. *Manders*, 338 F.3d at 1319. Georgia's Constitution refers to sheriffs as "County officers." Ga. Const. art. IX, § 1, ¶ 3(a). County residents elect their local sheriff. *Id.* And the county funds the sheriff's budget. *See Chaffin v. Calhoun*, 262 Ga. 202, 203 (1992) ("[T]he county commission has the power and the duty to issue a budget."). Nonetheless, the Eleventh Circuit has concluded that "only the State controls and grants powers and duties to sheriffs." *Manders*, 338 F.3d at 1312. The title "county officers" merely reflects the sheriff's "geographic jurisdiction in the State." *Id.* And sheriffs "act on behalf of the State in enforcing the laws and keeping the peace in that jurisdiction." *Id.* Against this background of State control, the Court next examines the Defendant's particular functions at issue—namely, overseeing the Detention Center and setting policy for crediting sentences for time served in pretrial detention—under Georgia law.

### 3. *Manders* Factors

The *Manders* factors weigh in favor of immunity for Defendant. The first three factors favor immunity. The fourth factor, responsibility for judgments, weighs against immunity, but it alone "does not defeat immunity." *Lake*, 840 F.3d at 1344 (quoting *Manders*, 338 F.3d at 1329).

### a. How State Law Defines the Function

The first factor is how state law defines the function at issue. *Id.* at 1339. State law assigns the sheriff's office "specific statutory duties" in law enforcement, state courts, and corrections. *Manders*, 338 F.3d at 1312. Relevant to Defendant's Motion for Judgment on the Pleadings are the sheriff's duties as administrator of corrections. *See In re Irvin*, 254 Ga. 251, 253 (1985) ("It is clear that the legislature has vested broad authority in the office of sheriff to administer the jails."). Georgia law provides that "sheriffs are jailers of the counties and have the authority to appoint other jailers, subject to the supervision of the county governing authority, as prescribed by law." O.C.G.A. § 42-4-1. Subject to county supervision, here, refers to other jailers appointed by the sheriff. *See Manders*, 338 F.3d at 1311 n.14 (reading O.C.G.A. § 42-4-1 to mean that sheriffs "may elect in writing to make their appointment [of jailers] subject to the county civil service system"). The sheriff himself is not subject to county supervision. Therefore, the sheriff's "authority over inmates and the duty to administer the jail" flow from State law rather than Irwin County. *Manders*, 338 F.3d at 1315.

While this analysis provides broader context for Defendant's correctional duties and his authority to detain plaintiff, it does not reach another function at issue—establishing policy for awarding time credits for pretrial detention. State law provides that each person convicted of a crime in Georgia "shall be given full credit for each day spent in confinement awaiting trial." O.C.G.A. § 17-10-11(a).

State law also governs how individuals receive those credits. "[T]he amount of credit for time spent in confinement while awaiting trial is to be computed by the convict's pre-sentence custodian." *Cochran v. State*, 315 Ga. App. 488, 489 (2012). Georgia law "requires sheriffs to take custody of all inmates in the jail in their counties." *Lake*, 840 F.3d at 1338; *see* O.C.G.A. § 42-4-4 (requiring the sheriff to take "custody of the jail" and "of such persons as are confined therein"). Therefore, Defendant in his official capacity as sheriff was Plaintiff's custodian, both pretrial and after sentencing. *See Lake*, 840 F.3d at 1339 ("The duty to take custody of inmates entails certain custodial responsibilities . . . .").

O.C.G.A. § 17-10-12(a) requires the "custodian of the defendant" to submit to the clerk of court "an affidavit specifying the number of days" the defendant spent in pretrial custody after a sentence is imposed. "Where the defendant has been sentenced to the custody of an official other than the commissioner of corrections, the clerk of the court shall transmit the custodian's affidavit to the proper authorities who shall give the defendant credit for the number of days spent in custody prior to conviction and sentence." O.C.G.A. § 17-10-12(c).[5] Here, the Superior Court sentenced Plaintiff to the sheriff's custody at the county

_____

[5] From this statute, it is unclear who are the "proper authorities" charged with actually crediting the sentences. Generally, credits for time served are "awarded by the post-sentencing custodian." *Diaz*, 245 Ga. App. at 381. The sheriff is to "take custody of all inmates in the jail," *Lake*, 840 F.3d at 1338, and "to administer the jail[]," *Manders*, 338 F.3d at 1315. Therefore, Defendant would at least have the duty to set jail policy in this area, if he is not, indeed, the person charged with crediting the sentences.

jail, rather than the Commissioner of Georgia Department of Corrections. Therefore, by statute, Defendant should have established jail policy to compute and award Plaintiff's time credit. *Diaz*, 245 Ga. App. at 381.

In sum, Defendant's duty to establish policy in this area flows generally from state law that bestows sheriffs' authority as "jailers of the counties." O.C.G.A. § 42-4-1(a). A second state law authorizes Plaintiff's pretrial detention time credits. O.C.G.A. § 17-10-11(a). And specific to the function at issue, a third state law empowers Defendant as jailer to calculate and award the time credits. O.C.G.A. § 17-10-12(a)–(b). Georgia law constructs the statutory framework at issue. It sets forth Defendant's corrections duties including calculating, recording, and awarding time credits when appropriate. Establishing policy for processing time credits would be in accordance with this state law mandate. And the sheriff's function ultimately serves the State because Plaintiff was sentenced for violating the Georgia criminal code, rather than a local ordinance. The first factor of the *Manders* analysis, thus, favors immunity for Defendant.

### b. Where State Law Vests Control

The second factor in the Eleventh Amendment analysis is where Georgia law vests control over the function. *Lake*, 840 F.3d at 1342–43. Georgia law places responsibility on the sheriff, as "pre-sentence custodian," to "compute" sentence credits. *Cochran*, 315 Ga. App. at 489. Georgia law also provides parameters for how sheriffs are to "compute" the sentence credit. O.C.G.A. § 42-

18

4-7(a) requires the sheriff to "keep a record of all persons committed to the jail" where "he or she is sheriff." This provision controls the sheriff's record-keeping policy to the extent that it sets forth the type of information sheriffs must record. *See id.* ("This record shall contain . . . ."). O.C.G.A. § 42-4-7(a) directly implicates pretrial detention because it requires sheriffs to record "the date of such person's commitment to jail, the day of such person's discharge, under what order such person was discharged, and the court from which the order issued." The State mandates that the sheriff record the dates an individual arrives and leaves the county jail, as well as the disposition of his criminal case. *Id.* That record of course would include the number of days an individual spent in pretrial detention.

Georgia law also controls how a sheriff communicates the number of days the individual spent in pretrial confinement. O.C.G.A. § 17-10-12(a) requires the sheriff to submit an affidavit to the clerk of court specifying the number of days to be credited. The affidavit then becomes "part of the official record." *Id.* These statutes represent the State's management and control over the sheriff's record-keeping duties as well as the flow of information necessary to credit an individual's sentence following pretrial detention. Therefore, Georgia law controls sheriffs' ability to make policy in this area. And the State does not share its control with the county.

### c. Source of Funds

The third factor in the Eleventh Amendment analysis is the source of funding for the function at issue. *Lake*, 840 F.3d at 1343.

State law mandates that the county funds the jail's infrastructure. The county must "(1) maintain the jail structure, (2) appropriate funds for necessities to inmates . . . and the salaries of [the Sheriff] and his deputies, and (3) pay the premium for the Sheriff's official bond." *Manders*, 338 F.3d at 1323; *see, e.g.*, O.C.G.A. §§ 36-9-5(a), 15-16-20. The county also funds the sheriff's budget. *See Chaffin*, 262 Ga. at 203 ("[T]he county commission has the power and the duty to issue a budget."). Therefore, jailing defendant was funded by the county. And, the sheriff's budget necessarily funded the performance of Defendant's duties related to Plaintiff's detention.

Most of the funding attributable to Defendant's role in Plaintiff's injury comes from general state-law requirements that compel the county to provide "the personnel and equipment necessary to enable the sheriff to perform his duties." *Chaffin*, 262 Ga. at 203. However, while the county "must provide reasonably sufficient funds to allow the sheriff to discharge his legal duties," the county "may not dictate" how the sheriff spends that budget. *Manders*, 338 F.3d at 1324 (quoting *Chaffin*, 262 Ga. at 203–04). In other words, the county paying for Defendant's salary or his budget does not bear on his policy for administering the jail and facilitating sentence credits. The county cannot "indirectly, by the

20

exercise of [its] fiscal authority and [its] control of the county property" obstruct or interfere with the sheriff's state law duties. *Chaffin*, 262 Ga. at 203; *see Pellitteri v. Prine*, 776 F.3d 777, 782 (11th Cir. 2015) ("[A]lthough each county sets the total budget for the sheriff's office, it cannot dictate *how* the sheriff spends those funds.").

On the other hand, "[t]he State funds the annual training of sheriffs," which would have informed how Defendant operates the jail. *Manders*, 338 F.3d at 1323; *see* O.C.G.A. § 15-16-3(d) ("The cost of training . . . shall be paid . . . from state funds appropriated for such purpose."). The annual training includes "corrections practices" and specifically focuses on "the duties and operational functions of the office of sheriff." O.C.G.A. § 15-16-3(a). In contrast to the county's funding, the State's funding of annual training would influence the sheriff's corrections practices. The State's general mandate that counties fund the sheriff's budget and county jail does not affect Defendant's ability to set policy for operating the jail. Therefore, the source-of-funds factor tilts in favor of Defendant's immunity.

### d. Responsibility for Adverse Judgments

The fourth factor of the Eleventh Amendment analysis asks whether the state or county would be responsible for an adverse judgment against the sheriff. *Lake*, 840 F.3d at 1344. Preventing the state's treasury from paying out federal court judgments was the "impetus for the Eleventh Amendment." *Hess v. Port*

*Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994). Thus, the Supreme Court recognizes that this factor is "the most salient factor in Eleventh Amendment determinations." *Id.*; *see Freyre v. Chronister*, 910 F.3d 1371, 1384 (11th Cir. 2018) (calling liability-for-adverse-judgment factor "the most important of the *Manders* calculus"). But state responsibility is not a "per se condition" of immunity, and this factor is not dispositive. *Manders*, 338 F.3d at 1328 ("Never has the Supreme Court required an actual drain on the state treasury as a per se condition of Eleventh Amendment immunity.").

In Georgia, neither the county nor the State directly pays to satisfy judgments against the sheriff. *Lake*, 840 F.3d at 1344. The sheriff pays any adverse "judgment against him in his official capacity out of the budget of the sheriff's office, which implicates both county and state funds." *Id.* (quotation marks omitted).[6] This fact weighs heavily against Defendant's arm-of-the-state status. *See Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1313 (11th Cir. 2005) ("[E]ven if the county ultimately may not be held liable for a judgment against the sheriff, the fact that the state is not liable either weighs heavily against extending the state's Eleventh Amendment immunity to the

---

[6] The county would indirectly satisfy the judgment because it pays the sheriff's budget. If the sheriff is liable for a significant adverse judgment, "the practical reality" is that the sheriff would recoup the budget's losses from State funding. *Manders*, 338 F.3d at 1327 ("[B]oth county and state funds are implicated because [the sheriff] would need to seek a greater total budget from the county for his office and a greater daily rate from the State for felony offenders serving their state sentences in county jail.").

challenged conduct by the sheriff."). The Eleventh Circuit, however, instructs that when "both county and state funds indirectly are implicated" the liability-for-adverse-judgment "factor does not defeat immunity." *Manders*, 338 F.3d at 1329; *Lake*, 840 F.3d at 1344 ("[T]he application of the fourth factor in this appeal is resolved by *Manders*.").

The Court necessarily considers the fourth factor alongside the other three *Manders* factors, and while the final factor may be "most important" in Eleventh Amendment analysis, the Court finds that in light of the other factors favoring immunity, the liability-for-adverse-judgment factor does not defeat Defendant's immunity. The Court concludes that the four *Manders* factors together support Eleventh Amendment immunity. Therefore, immunity bars Plaintiff's official-capacity claims against Defendant. Plaintiff's claims against Defendant in his personal capacity remain.

### C.    Qualified Immunity

Defendant argues that qualified immunity bars Plaintiff's remaining claims. (Doc. 50, p. 16). Qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Objective reasonableness" is the applicable standard because the immunity is intended to give "officials breathing room to make reasonable but mistaken

judgments about open legal questions." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)) (quotation marks omitted). Courts therefore assess the reasonableness of the official's conduct "in light of the legal rules that were 'clearly established' at the time the action was taken." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

To receive qualified immunity, the official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks omitted). Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is *not* entitled to qualified immunity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). The plaintiff then must allege facts demonstrating (1) that the official violated a constitutional right; and (2) that the constitutional right was "clearly established" at the time of the alleged violation. *Id.* When the plaintiff fails to allege either a constitutional violation or a clearly established right, the court may grant the motion for judgment on the pleadings.

Plaintiff does not dispute that Defendant was engaged in a discretionary function. Jailing individuals and establishing jail policy is undoubtably "within the [sheriff's] job responsibilities." *Id.* at 1265. The Court next considers whether Plaintiff sufficiently alleged a constitutional violation of a clearly established right.

24

1.  Due Process Clause of the Fourteenth Amendment

Plaintiff alleges that Defendant failed to establish an appropriate policy to ensure that he received credit for his time served in pretrial detention. (Doc. 1, p. 13). According to Plaintiff, because Defendant failed to establish such a policy, Plaintiff was detained ten days beyond his sentence, and the over-detention violated his due process rights under the Fourteenth Amendment. (*Id.*).

The Due Process Clause of the Fourteenth Amendment guarantees the "right to be free from continued detention after it was or should have been known that the [individual] was entitled to release." *Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir. 1993); *see Powell v. Sheriff,* 511 F. App'x 957, 961 (11th Cir. 2013) ("[I]ndividuals [have] the right to be free from excessive continued detention after a jail or prison ceases to have a legal right to detain the individual."). A § 1983 over-detention claim under the Fourteenth Amendment "is essentially a claim of false imprisonment rising to the level of a liberty deprivation." *Cannon*, 1 F.3d at 1562. Thus, to properly allege a violation of this right, Plaintiff must allege both the elements of common law false imprisonment and a due process violation under the Fourteenth Amendment. *Id.* at 1562–63.

a. False Imprisonment

To state a claim for false imprisonment, Plaintiff must allege: (1) an intent to confine, (2) an act resulting in confinement, and (3) Plaintiff's awareness of his confinement. *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). Plaintiff

25

has sufficiently alleged these elements. Defendant, acting as sheriff of Irwin County, who oversaw the Detention Center, intended to confine Plaintiff. (Doc. 1, p. 6). His actions ensured Plaintiff's confinement. (*Id.*). And Plaintiff was clearly aware of his confinement during the ten days he was detained. Defendant does not dispute that Plaintiff sufficiently alleged these elements.

### b. Due Process Violation

To state a claim for a Fourteenth Amendment violation, Plaintiff must allege that when Defendant illegally detained him, Defendant acted with "deliberate indifference." *Campbell*, 586 F.3d at 840. Deliberate indifference means that the actor "had subjective knowledge of a risk of serious harm and disregarded that risk." *Id.* Acts of mere negligence cannot satisfy the deliberate indifference standard. *Cannon*, 1 F.3d at 1563 ("[N]egligent conduct does not give rise to § 1983 liability for resulting unintended loss of or injury to life, liberty, or property."). Defendant does not dispute that Plaintiff sufficiently alleged these requirements either.

First, Defendant should have been aware of his duty to establish policy for awarding credits for time served in pretrial detention. As discussed above, Georgia law is unambiguous that "[e]ach person convicted of a crime in this state shall be given full credit for each day spent in confinement awaiting trial." O.C.G.A. § 17-10-11(a). And O.C.G.A. § 17-10-12 sets forth the custodian's duty to calculate the number of days the individual spent in pretrial detention, process

that information, and credit his sentence where appropriate. Even assuming that Defendant overlooked these statutory requirements, Defendant subjectively knew of the potential harm because allegedly Plaintiff's counsel personally notified Defendant of the harm his client faced. (Doc. 1, p. 6). Plaintiff's Complaint indicates that Plaintiff's counsel telephoned the county jail directly and spoke with Defendant "to arrange for Plaintiff's immediate release." (*Id.*). Plaintiff further alleges that despite this conversation, Defendant "took no action" to release Plaintiff. (*Id.*). Defendant's alleged inaction continued for the ten days that Plaintiff was imprisoned. Plaintiff's counsel even "filed a writ of mandamus, seeking recognition of Plaintiff's statutory entitlement to credit for time served." (*Id.*).

Considering these allegations, the Court finds that Plaintiff sufficiently alleged that Defendant had subjective knowledge of the risk of over-detention, he disregarded that risk, and his conduct exceeded mere negligence. These allegations, accepted as true, demonstrate that Defendant violated Plaintiff's "right to be free from continued detention after it was or should have been known that [he] was entitled to release." *Cannon*, 1 F.3d at 1563. Therefore, Plaintiff has satisfied the first prong to defeat qualified immunity by alleging that Defendant violated a constitutional right. Next, the Court analyzes whether that right has been clearly established.

2.  Clearly Established Right

A plaintiff can demonstrate that the right violated was clearly established in three ways. First, a plaintiff may show that the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court has already decided "a materially similar case." *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)). Second, a plaintiff may point to a "broader, clearly established principle that should control the novel facts of the situation." *Id.* Finally, a plaintiff can argue that the alleged conduct "so obviously violate[s] the constitution that prior case law is unnecessary." *Id.*

Plaintiff has alleged a clearly established principle of law. The Eleventh Circuit recognizes "[t]he constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Cannon*, 1 F.3d at 1563; *see Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980)[7] ("Detention of a prisoner thirty days beyond the expiration of his sentence . . . constitutes a deprivation of due process."). And the Eleventh Circuit has already unequivocally deemed this right to be clearly established. *See Cannon*, 1 F.3d at 1564 ("Cannon had a clearly established right against false imprisonment without due process."); *Woody v. Spires*, No. 5:18-CV-419, 2019 WL 2471825, at *7

---

[7] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit opinions decided before October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1208 (11th Cir. 1981) (en banc).

(M.D. Ga. June 13, 2019) ("[T]he underlying constitutional right for a prisoner to be released when his sentence has expired is clearly established."). But, if there was any doubt, Georgia law also addresses Plaintiff's claim that Defendant imprisoned him unlawfully by failing to establish policy for crediting sentences for time served. *See, e.g.*, O.C.G.A. § 17-10-11(a) ("Each person convicted of a crime in this state shall be given full credit for each day spent in confinement awaiting trial . . . ."). The Georgia Supreme Court, interpreting the relevant statutes, has said:

> The clear policy behind O.C.G.A. §§ 17-10-9 through 17-10-12 is that time spent in incarceration under the authority of this state or a political subdivision thereof should count toward the time which a prisoner must serve. . . . [T]hose who must be confined in jail before and after trial, . . . should have credit against their sentence for that period of confinement.

*Spann v. Whitworth*, 262 Ga. 21, 22–23 (1992). With this guidance from the Eleventh Circuit, the Georgia Supreme Court, and Georgia statutes, the unlawfulness of Defendant's conduct, as alleged, would have been apparent to the objectively reasonable sheriff. *See Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) ("[I]n light of the pre-existing law the unlawfulness must be apparent [to be clearly established]."). Therefore, Plaintiff has sufficiently alleged a violation of a clearly established Constitutional right. The Court denies Defendant's claim of qualified immunity at this stage in the litigation.

**D. Official Immunity**

The Court also denies Defendant's claim of official immunity under Georgia law at this stage of the litigation. *See Cameron v. Lang*, 274 Ga. 122, 123 (2001) ("The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity."). This immunity protects state officials "from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." *Id.*; *see also Brown v. Penland Constr. Co., Inc.*, 281 Ga. 625, 625–26 (2007) (precluding liability where "the official has not acted in a wilful or wanton manner; with actual malice; or with the actual intent to cause injury"). As discussed above, Plaintiff does not dispute that Defendant was engaged in a discretionary function. Thus, the burden shifts to Plaintiff to demonstrate that Defendant acted with malice or an intent to injure Plaintiff. *See Reed v. DeKalb Cty.*, 264 Ga. App. 83, 86 (2003) ("Absent malice or intent to injure, no liability attaches to the officer's exercise of his lawful discretion . . . .").

For the purposes of official immunity, "actual malice requires a deliberate intention to do wrong." *Marshall v. Browning*, 310 Ga. App. 64, 67 (2011) (quoting *Selvy v. Morrison*, 292 Ga. App. 702, 704 (2008)). This means that the defendant intended "to cause the harm suffered by the plaintiffs." *Id.* Similarly, "the phrase 'actual intent to cause injury' has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the

act purportedly resulting in the claimed injury." *Id.* at 67–68 (quoting *Selvy*, 292 Ga. App. at 705).

According to Plaintiff, Defendant "intentionally exposed Plaintiff to the risk of serious harm of continued, unlawful detention." (Doc. 1). Plaintiff also claims Defendant's conduct was "willful, reckless, and wanton." (*Id.*). Further, Plaintiff's allegation that Pujadas informed Defendant of the risk of over-detention and Defendant did not act despite Pujadas' warnings may suggest intentional wrongdoing. (*Id.*). These allegations—taken together with Plaintiff's other factual assertions and viewed in the light most favorable to Plaintiff—indicate that Plaintiff has alleged that Defendant acted with malice or an intent to injure sufficient to deny Defendant's claim of official immunity.

## V.    CONCLUSION

The Eleventh Amendment bars Plaintiff's official-capacity § 1983 and state law claims against Defendant. Quasi-judicial immunity, qualified immunity, and official immunity will not shield Defendant from Plaintiff's remaining claims at this stage of the litigation. Accordingly, Defendant's Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part.** Plaintiff's claims against Defendant in his official capacity are **DISMISSED.** Defendant's Motion to Amend (Doc. 46) is also **GRANTED.**

**SO ORDERED**, this 6th day of April, 2020.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

kac