IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **TYLER MONCUS**, <br><br> Plaintiff, <br><br> v. <br><br> **LASALLE MANAGEMENT CO., LLC, et. al.**, <br><br> Defendants. | Civil Action No. 7:19-CV-75 (HL) |

**ORDER**

Plaintiff Tyler Moncus brings a 42 U.S.C. § 1983 claim as well as a state law tort claim against Defendant Irwin County, Georgia and other Defendants. (Doc. 1). Before the Court is Defendant's Motion for Judgment on the Pleadings. (Doc. 54). The Court previously granted Defendant's Motion to Amend its Answer. (Doc. 70). While permitting the amendment, the Court declined to review the documents in conjunction with the Motion for Judgment on the Pleadings because the documents Defendant sought to attach were not central to the complaint. (*Id.* at pp. 6–7); see *Horsley v. Feldt*, 304 F.3d 1125, (11th Cir 2002) (requiring an attachment to be "central to the plaintiff's claim").

In Defendant's Motion for Judgment on the Pleadings, it argues that Plaintiff failed to plead an official policy, custom, or practice of the county necessary to impose municipal liability under 42 U.S.C. § 1983. (Doc. 54). The Court finds that under Georgia law, the Irwin County Sheriff—rather than Irwin

County—establishes policy for the jail. The sheriff acts on behalf of the State, and thus, he is not a policymaker for Irwin County. Plaintiff has not stated a § 1983 claim against Defendant. Sovereign immunity shields Defendant from Plaintiff's state law claim. Accordingly, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings.

I. **FACTUAL BACKGROUND**

Plaintiff was arrested in Irwin County, Georgia on September 2, 2015 and subsequently indicted on two counts of aggravated assault. (Doc. 1, ¶¶ 20, 22). The Irwin County Detention Center ("Detention Center") detained Plaintiff for eighteen days before his release on bail. (*Id.* at ¶ 21). The Tifton Circuit District Attorney prosecuted the criminal charges against Plaintiff. (*Id.* at ¶ 23). Plaintiff's defense counsel, Thomas J. Pujadas, and the District Attorney negotiated a plea agreement to resolve the charges. (*Id.* at ¶ 25). In accordance with the plea agreement, Plaintiff pled guilty to one count of aggravated assault. (*Id.*). On August 28, 2017, the Superior Court sentenced Plaintiff to ten days of incarceration followed by five years of probation. (*Id.* at ¶ 26). He was taken into custody that afternoon.

Plaintiff served the full ten days of his sentence of incarceration. (*Id.* at ¶ 38). He alleges that he was entitled to and denied credit for the eighteen days he spent in pretrial detention. (*Id.* at ¶¶ 48–49). According to Plaintiff, the eighteen days he spent in pretrial detention nullified his subsequent ten-day sentence (*Id.*

2

at ¶¶ 48–49), and he should have been "immediately released upon presentation to [Donnie Youghn,] the Irwin County Sheriff" at the Detention Center. (*Id.* at ¶ 30). Instead, Plaintiff was taken into custody. (*Id.* at ¶ 31). Mr. Pujadas phoned Mr. Youghn to arrange for Plaintiff's release. (*Id.* at ¶ 32). Plaintiff alleges that while Mr. Pujadas was on the phone with Mr. Youghn, Mr. Pujadas overhead a jail employee say the District Attorney ordered that Plaintiff remain in custody. (*Id.* at ¶ 33).

Mr. Pujadas filed a writ of mandamus seeking Plaintiff's immediate release. (*Id.* at ¶ 37). The state court, however, failed to conduct a hearing and rule on his petition while Plaintiff spent ten days in the Detention Center. (*Id.*).

## II. MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

Parties may move for a Motion for Judgment on the Pleadings "[a]fter the pleadings are closed" but "early enough not to delay trial." Fed. R. Civ. P. 15(c). Defendant filed its answer and amended answer before moving for Judgment on the Pleadings. The pleadings have "closed," and Defendant's motion is ripe for this Court's review. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336–1337 (11th Cir. 2014) (discussing when pleadings "close" for Rule 12(c) analysis).

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id.* at 1335 (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). The Court considers "the substance of the pleadings and any

3

judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Like a motion to dismiss, the Court "accept[s] as true all material facts alleged in the non-moving party's pleading," and views those facts "in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335. Review focuses on the "competing pleadings," otherwise known as the complaint and answer, and compares their allegations. *Id.* Where material issues of fact arise or as a matter of law, the non-moving party states a claim, judgment on the pleadings must be denied. *Id.*

### III. ANALYSIS

#### A. Municipal Liability Under § 1983

Plaintiff's Complaint alleges that Defendant failed to have a policy in place to ensure that individuals detained at the Detention Center received credit for their time served in pretrial detention. (Doc. 1). Irwin County is a municipal defendant. To establish municipal liability under § 1983, the plaintiff must identify a "policy" or "custom" of the county that caused his injury. *Grech v. Clayton Cty.*, 335 F.3d 1326, 1331 (11th Cir. 2003) (en banc); *see also Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 695 (1978). A plaintiff cannot simply point to the acts of a government employee and rely on the doctrine of *respondeat superior* to support his claims. *Id.* at 691–93; *see Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[L]ocal governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions."

(internal quotation marks and citations omitted)). The county's policy or custom must bear a relationship to the employee's allegedly unconstitutional conduct.

"[L]ocal governments can never be liable under § 1983 for the acts of [officials] whom the local government has no authority to control." *Turquitt v. Jefferson Cty.*, 137 F.3d 1285, 1292 (11th Cir. 1998) (en banc). In other words, the "local government 'must have power in an area in order to be held liable for an official's acts in that area.'" *Id.* (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1578 (11th Cir. 1996)). Therefore, when imposing municipal liability, courts ask which government body under state law had control over the function at issue. *Grech*, 335 F.3d at 1331. Plaintiff attributes his injuries to Defendant's failure to institute jail policy for crediting sentences for time served. The Court will examine whether, under Georgia law, Defendant had power to establish jail policy in that area, and whether the county had control over the jail's policymaker. *Id.* at 1330.

First, the Court must determine "who the policymaker is and in which particular area that policymaker acted." *Turquitt*, 137 F.3d at 1287. Georgia counties have statutory mandates to fund the jail's infrastructure, O.C.G.A. § 36-9-5, and the jail—like other county properties—is "placed in the keeping of the sheriff." O.C.G.A. § 36-9-8. Section 36-9-8 pertains to the sheriff's duty to preserve county property and prevent waste. *Brown v. Dorsey*, 276 Ga. App. 851, 856–57 (2005). The State legislature has also "vested broad authority in the office of sheriff to administer the jails." *In re Irvin*, 254 Ga. 251, 253 (1985).

5

Sheriffs are required "to take custody of all inmates in the jail in their counties." *Lake v. Skelton*, 840 F.3d 1334, 1338 (11th Cir. 2016); *see* O.C.G.A. § 42-4-4 (requiring the sheriff to take "custody of the jail" and "of such persons as are confined therein"). "Sheriffs who refuse to take custody of an inmate may be charged with a misdemeanor." *Manders v. Lee*, 338 F.3d 1304, 1315 (11th Cir. 2003) (en banc) (citing O.C.G.A. § 42-4-12). Furthermore, the sheriff's duties as administrator of the county jail includes "keep[ing] a record of all persons committed to the jail" where "he or she is sheriff." O.C.G.A. § 42-4-7(a). This provision controls the sheriff's jail policy to the extent that it sets forth the type of information sheriffs must record about the individuals detained there. *See id.* ("This record shall contain . . . ."). The record-keeping requirements implicate pretrial detention because the sheriff must record "the date of such person's commitment to jail, the day of such person's discharge, under what order such person was discharged, and the court from which the order issued." *Id.*

After reviewing the relevant law, the Court concludes that the Irwin County Sheriff is the policymaker for the county jail, and he acted (or failed to act) pursuant to his state-law duties. Next, the Court will determine whether the sheriff exercised his policymaking authority on behalf of the county.

The Court previously determined in this case that the sheriff performs his corrections duties on behalf of the State, not the county. *See Moncus v. Lasalle Mgmt. Co.,* No. 7:19-CV-75 (HL), 2020 WL 1679695, at *5–*9 (M.D. Ga. Apr. 6,

6

2020) (finding that sheriff was entitled to Eleventh Amendment immunity because he acted as an arm of the State as administrator of the jail). The sheriff is separate and independent of the county and its governing body. *Manders*, 338 F.3d at 1310. "[C]ounties have no authority over what corrections duties sheriffs perform, or which state offenders serve time in county jails, or who is in charge of the inmates in the county jails." *Id.* at 1318. Under those circumstances, the Court cannot hold Defendant liable for the sheriff's policies. Simply put, "[a] sheriff's policy or act cannot be said to speak for the county if the county has no say in what policy or action the sheriff takes." *Grech*, 335 F.3d at 1331; *see, e.g.*, *Jackson v. Smith*, 683 F. App'x 867, 871–72 (11th Cir. 2017) (affirming district court's entry of summary judgment in favor of municipal defendant because the sheriff established policy for pretrial detainees "and oversaw the detention center"). Accordingly, Plaintiff's § 1983 claim against Defendant is **DISMISSED**.

### B. State Law Claim

Plaintiff also brings a state law claim against Defendant for false imprisonment. (Doc. 1). Defendant argues that the State's sovereign immunity shields the county from Plaintiff's claim. (Doc. 54-1, p. 8). Georgia's Constitution provides broad sovereign immunity to the State and its counties, precluding suit against them. *See Layer v. Barrow Cty.*, 297 Ga. 871, 872 (2015) ("As a general rule, counties enjoy sovereign immunity."); *Gilbert v. Richardson*, 264 Ga. 744, 745–46 (1994) (discussing the development of sovereign immunity in Georgia).

Nevertheless, plaintiffs may successfully bring claims against the State and local governments where sovereign immunity has been waived. Instances of waiver are rare. Georgia's Constitution requires "an Act of the General Assembly" that specifically waives sovereign immunity and describes the extent of the waiver. Ga. Const. art. I, § 2, ¶ IX(e).

The predominant avenue for bringing claims against the State is through the Georgia Tort Claims Act. O.C.G.A. § 50-21-20, *et seq*. The Act waived sovereign immunity to permit tort claims against the State. O.C.G.A. § 50-21-23. But the Act "expressly excludes counties from the ambit of this waiver." *Gilbert*, 264 Ga. at 747; *see* O.C.G.A. § 50-21-22(5) (excluding "counties, municipalities, . . . and other units of local government" from the Act's definition of "State"). In certain circumstances, purchasing liability insurance waives sovereign immunity to the extent of the policy's coverage. *See, e.g.*, O.C.G.A. § 33-24-51(b) (waiving sovereign immunity for losses related to local governments' use of motor vehicles). Plaintiff points to the sheriff's bond as evidence that Defendant has waived its sovereign immunity. O.C.G.A. §§ 15-16-5, 15-16-23. The sheriff's bond is inapplicable to Defendant's immunity because as discussed thoroughly in this case, the sheriff is not a county employee. The sheriff's bond waives sovereign immunity only as to the sheriff and his deputies. *See Cantrell v. Thurman*, 231 Ga. App. 510, 514–15 (1998) ("[T]he General Assembly had the clear intent that the sheriff and deputy sheriffs continue to be liable under bond . .

. ."), *overruled on other grounds by Tattnall Cty. v. Armstrong*, 333 Ga. App. 46, 47 (2015). State law requiring the county to provide funding for the sheriff's bond does not open the county to liability for the sheriff's acts. *See* O.C.G.A. § 45-4-7 (requiring county to fund sheriff's bond); O.C.G.A. § 45-4-24 (listing conditions of liability). Accordingly, Plaintiff's state law claim against Defendant is **DISMISSED**.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is **GRANTED.** (Doc. 54). Defendant's Motion for Summary Judgment is moot. (Doc. 90). Plaintiff's claims against Defendant are **DISMISSED.**

**SO ORDERED**, this 31st day of July, 2020.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

kac